## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **RONALD L. WEBB,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:04-CV-2487-P** |
| | § | **ECF** |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security** | § | |
| **Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the District Court's Order of Reference, entered November 23, 2004, this case has been referred to the United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b). This is an appeal from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying the claim of Ronald L. Webb ("Plaintiff") for a period of disability and disability insurance benefits under Title II of the Social Security Act. The Court considered "Plaintiff's Appeal from the Decision of the Commissioner of Social Security," filed February 4, 2005; "Defendant's Brief," filed March 7, 2005; and "Plaintiff's Reply to Brief of Defendant," filed March 22, 2005. For the reasons stated below, the final decision of the Commissioner should be **AFFIRMED**.

## I. BACKGROUND

Plaintiff was born on November 19, 1956. Tr. at 653. Plaintiff filed applications for disability insurance benefits and a period of disability on December 16, 2002 and contends that he has not been able to work since May 19, 2001 because of back pain and weakness of his legs. *Id.* at 61-63, 79. Plaintiff has a tenth grade education and has been previously employed as a delivery

truck driver, tire man, oil changer, material handler and forklift operator. *Id*. at 653, 672.

The Commissioner denied Plaintiff's application initially and upon reconsideration. *Id*. at 26-35. Administrative Law Judge Randolph Mason (the "ALJ") held a hearing on the application on April 26, 2004 and issued an unfavorable decision on May 27, 2004. *Id*. at 10-21, 650-76. Plaintiff, represented by an attorney, Ronald D. Honig, appeared and testified. Tr. at 652. A vocational expert, Donna Humphries, and a medical expert, Ann Turbeville, M.D., also appeared and testified. *Id*. The ALJ concluded that although Plaintiff's ability to perform the full range of sedentary work activity is compromised by additional exertional and/or non-exertional limitations, Plaintiff is not disabled because there are a significant number of jobs in the national economy that he can still perform. *Id*. at 19-20. Plaintiff was 47 years old at the time of the ALJ's decision. *Id*. at 653.

On September 24, 2004, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's unfavorable decision the Commissioner's final decision. *Id*. at 5-8. Plaintiff appealed the Commissioner's final decision to the District Court on November 18, 2004.

## II.  STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether the decision is supported by substantial evidence, and (2) whether the proper legal standards were applied to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)

2

(footnotes omitted).

It is not the place of this Court to "reweigh the evidence or try the issues *de novo* or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. Substantial evidence is that which a reasonable mind might accept to support a conclusion. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). It is "more than a mere scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). In order to make a finding of no substantial evidence, the court must determine that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)). Even if the Court determines that the evidence preponderates in Plaintiff's favor, the Court must still affirm the Commissioner's finding if there is substantial evidence to support those findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner and not this Court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

In determining whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett*, 67 F.3d at 563; *Martinez*, 64 F.3d at 173-74. The Commissioner must consider whether: (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a mental or physical impairment; (3) the claimant's impairment meets or equals an impairment listed in Appendix 1, Subpart P, Regulation No. 4; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform other work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563 n.2; *Martinez*,

64 F.3d at 173-74.  The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at step five.  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989)).  At step five, once the Commissioner shows that other jobs are available to the claimant, the burden shifts to the claimant to rebut this finding.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

For purposes of social security cases, "disability" means an inability to engage in substantial gainful activity because of a medically determinable mental or physical impairment or combination of impairments that could be expected to either last for a continuous period of not less than 12 months or to result in death.  *See* 42 U.S.C. § 423(d)(1)(A).  In order to establish disability, the record must show that the limitations imposed by Plaintiff's conditions prevent him from engaging in any substantial gainful activity.  *See Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).

When reviewing a decision of "not disabled," the Court's function is to determine whether the record as a whole contains substantial evidence that supports the final decision of the Commissioner, as the trier of fact.  *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989); *Kane*, 731 F.2d at 1219.  Four elements of proof should be weighed to determine if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of examining and treating physicians; (3) Plaintiff's subjective evidence of pain and disability; and (4) age, education, and work history.  *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).  The ALJ must develop the facts fully and fairly relating to an applicant's claim for disability benefits.  *Ripley*, 67 F.3d at 557.  If the ALJ fails to do this, the decision is not substantially justified.  *Id*.  Nevertheless, the ALJ's decision should be reversed only if Plaintiff shows that he was prejudiced.  *Id*.  A procedurally imperfect administrative ruling should not be overturned unless the

substantive rights of a party have been prejudiced.  *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997).

## III.  ANALYSIS

Plaintiff contends that the Commissioner's decision is not supported by substantial evidence. Pl.'s Br. at 12.  Plaintiff objects to the Commissioner's decision on three grounds.  Plaintiff contends that 1) the ALJ did not properly consider the impact of all of Plaintiff's nonexertional impairments upon his ability to work, 2) the ALJ did not adequately weigh the medical opinions of Plaintiff's physicians, and  3) the ALJ did not properly evaluate Plaintiff's credibility.  *Id*. at 1.

## A.  Credibility

Plaintiff asserts that "to the extent that the ALJ's credibility assessment affected his assessment of residual functional capacity, such assessment is not supported by substantial evidence." *Id*. at 20.  Plaintiff points out that "[f]ailure to indicate the credibility choices made and the basis for those choices in resolving the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints requires reversal and remand."  *Id*. at 20 (citing *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981)).  Defendant contends that "the ALJ correctly followed both Social Security policy, as evidenced in the SSRs, and Fifth Circuit case law in evaluating Webb's alleged symptoms."  Def.'s Br. at 6.

 In *Scharlow*, the Fifth Circuit determined that reversal and remand was required because "the ALJ failed to make a specific finding regarding [the claimant's] allegations of pain."  *Scharlow*, 655 F.2d at 649.  The Fifth Circuit noted that "the ALJ referred to 'the medical evidence' as the basis for his decision, and gave no indication how much attention he paid to the testimony about pain. . . . he made no credibility findings at all, and therefore made no finding that he disbelieved

her testimony.   Since [the claimant's] allegations of pain were serious enough to warrant a credibility determination, reversal and remand is required."  *Id.*

In the case at hand, the ALJ indicated how much attention he paid to Plaintiff's allegations and the reason for his decision.  The ALJ found  "the claimant's testimony to be partially credible in light of the evidence."  Tr. at 16.  Then, the ALJ went on to list the medical evidence in support of his determination that Plaintiff's testimony was partially credible.  *Id.* at 16-17.  Although Plaintiff testified that he experienced severe pain, Plaintiff also testified that he was not taking any pain medication other than Advil.  *Id.* at 653-57, 666.  The ALJ noted this testimony in his decision. *Id.* at 16.   "The ALJ found the medical evidence more persuasive than the claimant's own testimony.  These are precisely the kinds of determinations that the ALJ is best positioned to make. . . . The ALJ enjoys the benefit of perceiving first-hand the claimant at the hearing."  *Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir. 1994).  The ALJ gave sufficient consideration to Plaintiff's credibility as required by the Fifth Circuit, and the Commissioner's decision should not be reversed on this basis.

### B.  Medical Opinions

Plaintiff contends that the ALJ failed to adequately weigh the medical opinions of Plaintiff's treating physicians, Nafees Saifee, M.D., John A. Sazy, M.D., and An D. Ho, M.D.  Pl.'s Br. at 17-19.

On June 19, 2003, one of Plaintiff's treating physicians, Dr. Saifee, indicated in a report to the Texas Rehabilitation Commission – Disability Determination Services that his prognosis was guarded and that Plaintiff is unable to work.  Tr. at 501.  Dr. Saifee diagnosed "chest pains, congestive heart failure, emphysema, phlebitis, obesity, sleep apnea, and arthritis."  *Id.*  The ALJ

6

stated that he did not give Dr. Saifee's assessment significant weight because Dr. Saifee did not

submit any diagnostic evidence to support his assessment.  *Id.* at 16.  Plaintiff counters that "Dr.

Saifee's assessment, as the treating physician, is supported by all of the evidence in the record,

including the diagnostic testing performed during Webb's hospitalization, often at Dr. Saifee's

request."  Pl.'s Br. at 19.  The Commissioner states that the ALJ "thoroughly considered and

evaluated Dr. Saifee's opinion, but ultimately determined that it was not supported by diagnostic

evidence."  Def.'s Br. at 3-5.  The entirety of the ALJ's discussion of Dr. Saifee's assessment in his

decision is as follows:

> In June 2003, Dr. Saifee sent in a statement with a diagnosis of chest pain,
> congestive heart failure, emphysema, phlebitis, obesity, sleep apnea, and arthritis for
> the claimant.  Dr. Saifee opined that the claimant's prognosis was guarded and he
> was unable to work (Exhibit 13F).  However, Dr. Saifee failed to submit any
> diagnostic evidence to support his assessment.  Therefore, the Administrative Law
> Judge has not given Dr. Saifee's assessment significant weight.

Tr. at 16.  The ALJ then went over Plaintiff's testimony concerning the activities that Plaintiff is

still capable of performing.  *Id.*

The ALJ rejected Dr. Saifee's opinion that Plaintiff is unable to work, concluding that

Plaintiff is capable of performing sedentary work.  *Id.* at 16, 20.  Therefore, unless there is reliable

medical evidence controverting Dr. Saifee's assessment, the ALJ can reject Dr. Saifee's assessment

only if he performs a detailed analysis of Dr. Saifee's views under the criteria set forth in 20 C.F.R.

§ 404.1527(d)(2)[1].  *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) ("Absent reliable medical

---

1. 20 CFR §  404.1527(d)(2).  Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence from a treating or examining physician controverting the claimant's treating specialist, an

ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of

the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).").

---

evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

> (i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

> (ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 CFR § 404.1527(d)(3). Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

20 CFR § 404.1527(d)(4). Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

20 CFR § 404.1527(d)(5). Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

20 CFR § 404.1527(d)(6). Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

Another one of Plaintiff's treating physicians, Dr. Sazy, completed an assessment on February 1, 2002 that is compatible with the ALJ's decision that Plaintiff is capable of performing sedentary work[2]. Tr. at 439. Although Plaintiff contends that the ALJ did not consider limitations that Dr. Sazy found, including a limitation to working no more than six to eight hours, the "Third Circuit's rule that an ALJ must articulate specifically the evidence that supported his decision and discuss the evidence that was rejected" is a "rigid approach" that is "unnecessary." *Falco*, 27 F.3d at 163. Also, indicating that Plaintiff can work six to eight hours is not incompatible with Plaintiff being capable of working regular eight hour work days. Furthermore, the box that Dr. Sazy marked off to indicate that Plaintiff can work six to eight hours is in a section where the doctor is to indicate whether Plaintiff can work overtime or work a ten hour/four days a week shift. Tr. at 439. The next box available to Dr. Sazy to check off was for eight to ten hours. *Id.* Since Dr. Sazy indicated in the same assessment that Plaintiff is otherwise in good medical condition, it appears that Dr. Sazy was simply trying to indicate that Plaintiff should work regular hours. *Id.* Although another one of Plaintiff's treating physicians, Dr. Ho, indicated in a physical residual functional capacity questionnaire that Plaintiff has limitations that may be incompatible with sedentary work, Dr. Ho also indicated in the same questionnaire that it was his first examination of Plaintiff and that Plaintiff's prognosis was "good." *Id.* at 626. The Commissioner did not address Dr. Ho's assessment in her response brief, and the ALJ noted that he "did not give great weight to the doctor's assessment, since the evidence clearly shows that the claimant would be able to perform sedentary

---

2. 20 C.F.R. § 404.1567(a). Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

work activity." *Id*. at 17.

Plaintiff asserts that Dr. Sazy's February 1, 2002 opinion, which the ALJ indicated he gave significant weight to, "preceded many of [his] emergency room visits, hospitalizations, and diagnostic tests." Pl.'s Reply at 3. The treating physician's assessment that the ALJ states he gave great weight to was made on February 1, 2002, whereas the two treating physicians' assessments that the ALJ contends that he did not give great weight to were conducted on June 19, 2003 and April 5, 2004. Tr. at 439, 501, 629. The hearing before the ALJ was conducted on April 26, 2004. *Id*. at 650. The ALJ did not address this issue. Nevertheless, all the treating physicians' assessments were made during Plaintiff's alleged period of disability. *Id*. at 79, 439, 501, 629.

Dr. Sazy's assessment is compatible with the ALJ's decision that Plaintiff is capable of sedentary work. *Id*. at 438-39. The ALJ indicated that he gave Dr. Sazy's assessment significant weight. Id. at 17. One of Plaintiff's examining physicians, Dr. J. Stan Johnson's assessment is also compatible with the ALJ's decision. *Id*. at 438-39. The ALJ stated that he gave Dr. Johnson's assessment significant weight. *Id*. at 17. Another one of Plaintiff's examining physicians, Dr. James J. Box's assessment, although not mentioned in the ALJ's decision, is also compatible with the ALJ's decision. *Id*. at 436-37. The ALJ adopted the opinion of the medical expert, Dr. Turbeville, that Plaintiff can perform sedentary work. *Id*. at 16, 668-70. Furthermore, although Plaintiff testified that Dr. Ho was his treating physician, the physical residual functional capacity assessment completed by Dr. Ho on April 5, 2004 indicates that it was Dr. Ho's first examination of Plaintiff and the record does not reflect any subsequent examinations of Plaintiff by Dr. Ho. *Id*. at 626-29. Plaintiff's attorney indicated that Dr. Ho's April 5, 2004 examination was his first examination of Plaintiff. *Id*. at 121. *See* 20 C.F.R. § 404.1527(i) (2006) ("Length of the treatment relationship and

the frequency of examination.  Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.  When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.").

The Court is not able to conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence" for the ALJ's decision in light of Plaintiff's physicians' assessments.  *See Dellolio*, 705 F.2d at 125.  Furthermore, the ALJ had the benefit of perceiving Plaintiff first-hand at the hearing.  *See Falco*, 27 F.3d at 164 n.18.  "[C]onflicts in the evidence, including medical opinions, are to be resolved by the [commissioner], not by the courts.  The reviewing court is not permitted to substitute its judgment for that of the [commissioner], even if the reviewing court finds that the evidence preponderates toward a wholly different finding."  *Patton*, 697 F.2d at 592 (citations omitted).

## C.  Impairments

Plaintiff contends that the ALJ did not properly consider Plaintiff's obesity, need for frequent urination, need to elevate his leg to waist level, need to use a cane during standing or ambulation, manipulative limitations, and sitting and standing limitations.  Pl.'s Br. at 12-17.

### 1.  Obesity

Plaintiff asserts that "[a]lthough it is quite clear that Mr. Webb is morbidly obese, the decision of the ALJ does not reflect consideration of the impact of obesity at all."  *Id*. at 13.  Defendant contends that the ALJ considered Plaintiff's obesity along with Plaintiff's other impairments.  Def.'s Br. at 6.

The ALJ heard Plaintiff's testimony regarding his height and weight being six feet, four inches, and 430 pounds. Tr. at 657. Plaintiff testified that he was 60 pounds over his usual weight. *Id*. The medical expert, Dr. Turbeville, testified that Plaintiff was obese, and having reviewed Plaintiff's records, Plaintiff does not meet any of the listings in Appendix 1, Subpart P, Regulation No. 4 and has the residual functional capacity to perform sedentary work. *Id*. at 669-70. In his decision, the ALJ pointed out Plaintiff's testimony concerning his height and weight and Dr. Turbeville's testimony regarding Plaintiff's obesity. *Id*. at 16. The ALJ also noted Plaintiff's testimony that he is still capable of doing light housework, such as loading the dishwasher, occasionally getting exercise by walking in Wal-Mart, being able to walk one block, and occasionally going fishing. *Id*. Plaintiff further testified that he drives his wife to and from work, which is three miles from their residence, drives her around and waits in the car while she runs errands, watches television, and plays with his granddaughters. *Id*. at 655-56, 667. After reiterating Plaintiff's and Dr. Turbeville's testimonies regarding Plaintiff's physical characteristics and capabilities, the ALJ accepted Dr. Turbeville's testimony that Plaintiff could perform sedentary work. *Id*. at 16.

The Commissioner's decision should be afforded great deference and should not be disturbed unless it is not supported by substantial evidence. *Leggett*, 67 F.3d at 564. In light of the above, the ALJ's decision appears to reflect consideration of Plaintiff's obesity. Even if the ALJ did not specifically articulate "the evidence that supported his decision," in regard to Plaintiff's obesity, he is not required to do so. *See Falco*, 27 F.3d at 163. Dr. Ho, one of Plaintiff's treating physicians, indicated on April 5, 2004 in a physical residual functional capacity questionnaire that Plaintiff is "overweight," but also indicated that Plaintiff's prognosis was "good." Tr. at 626. Considering

Plaintiff's testimony regarding the activities he is still able to engage in and the medical opinions, this Court is not able to conclude that the ALJ's decision is not supported by substantial evidence.

## 2. Need for Frequent Urination

Plaintiff contends that "the ALJ never considered the reduction of the occupational base caused by [his] need to frequently urinate. Thus, the Plaintiff asserts that the ALJ has not established that [he] can perform the alternative jobs upon which he has relied." Pl.'s Br. at 15. Defendant has not addressed this issue specifically, but generally contends that the ALJ gave adequate consideration to the impact of all of Plaintiff's non-exertional impairments. Def.'s Br. at 5-6.

Plaintiff testified that he was taking 240 milligrams of Lasix per day as prescribed by the VA to reduce swelling in his right leg. Tr. at 658. Plaintiff testified that he takes three doses of two 40 milligrams pills per day, in the morning, noon and at night. *Id*. Plaintiff testified that as a result, he needs to urinate two to three times within the hour right after he takes each dose and then every hour until he needs to take the next dose. *Id*. at 658. Plaintiff's attorney questioned the medical expert at the hearing on the effect of Lasix, and the medical expert testified that taking Lasix, especially when an individual first begins to take it, can cause frequent urination. *Id*. at 671. However, the medical expert also testified that upon reviewing the exhibits in Plaintiff's file, she only saw an order from January of 2004 for Plaintiff to take 20 milligrams of Lasix per day and not the 240 milligrams that Plaintiff had testified to taking. *Id*. at 668-69.

This Court's review is limited to whether the ALJ's decision is supported by substantial evidence. Plaintiff does not point to any medical support in the record for the 240 milligrams of Lasix he testified to have been taking at the time of the hearing and the Court does not see such

medical evidence in the record.  In addition, even if there was an order for the 240 milligrams of Lasix in the record, Plaintiff's physicians' assessments do not indicate that Plaintiff's need for frequent urination is a limitation on Plaintiff's working capability nor does Plaintiff contend that he complained of such side effects to any of his physicians.  Tr. at 438-39, 501-02, 626-29; Pl.'s Br. at 1-21.  In a physical residual functional capacity questionnaire completed by one of Plaintiff's treating physicians, Dr. Ho, item 7 asks Dr. Ho to "[d]escribe the treatment and response including any side effects of medication that may have implications for working."  Tr. at 626.  The only notation that Dr. Ho made in response was that "patient states that Paroxetine makes him sleepy." *Id*.  Therefore, it appears that Plaintiff did not complain of this side effect to his treating physician during an examination conducted 21 days prior to his hearing.  Plaintiff's "subjective complaints must be corroborated at least in part by objective medical testimony." *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989) (citing *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988)).  Based on the above, the Court is unable to conclude that the Commissioner's decision is not supported by substantial evidence.

### 3.  Need for Elevation of Leg

Plaintiff also raises the issue of his need to keep his legs elevated.  Pl.'s Br. at 15.  Plaintiff testified that he keeps his legs elevated to hip level most of the day to deal with swelling.  Tr. at 660.  The Commissioner did not specifically address this issue in her brief, but generally contends  that the ALJ considered all of Plaintiff's non-exertional impairments.  Def.'s Br. 5-6.

One of Plaintiff's treating physicians, Dr. Ho, indicated in a physical residual functional capacity questionnaire that Plaintiff should elevate his leg(s) "slightly" with prolonged sitting for six hours during an eight hour work day.  Tr. at 628.  The medical expert testified that Plaintiff's

legs appear to have been pretty stable for several years. *Id*. at 670. The medical expert noted Dr.

Ho's recommendation of slight elevation and testified that support stockings would be optimal to

deal with the swelling. *Id*. at 670. Plaintiff's attorney questioned the vocational expert whether

individuals would be capable of performing the jobs that she described if they had to elevate their

legs to "hip level," and not "slightly" as Dr. Ho indicated. *Id*. at 673, 628.

The ALJ is "entitled to determine the credibility of medical experts as well as lay witnesses

and to weigh their opinions and testimony accordingly." *Scott v. Heckler*, 770 F.2d 482, 485 (5th

Cir. 1985) (citation omitted). Although Plaintiff testified that he elevates his legs to hip level most

of the day, the only treating physician who addressed this issue, Dr. Ho, recommended that he

elevate the leg "slightly." Tr. at 660, 628. Furthermore, the medical expert, while acknowledging

Dr. Ho's recommendation, testified that the best thing for Plaintiff is support stockings. *Id*. at 670-

71. Plaintiff did not proffer anything other than his testimony in support of his position that he needs

to elevate his legs to hip level. Therefore, the ALJ need not adopt Plaintiff's unsubstantiated

testimony regarding the need for hip level elevation.

4. Impact of Use of a Cane for Standing or Ambulation

Plaintiff contends that the ALJ should have asked the vocational expert "to consider the

impact of use of a cane for standing or ambulation upon the capacity to perform the jobs upon which

he relied." Pl.'s Br. at 15. Plaintiff contends that his treating physician, Dr. Ho, advised Plaintiff

to use a cane or other assistive device when standing or walking. *Id*. at 15. Plaintiff testified that

he uses a cane whenever he is outside of his house to help his balance and that he uses the walls and

furniture to balance himself when he is at home. Tr. at 662. Plaintiff suggests that the ALJ's

determination of Plaintiff's non-disability is premised on a defective hypothetical. Pl.'s Br. at 15-16.

Defendant has not specifically addressed this issue, but generally contends that the ALJ considered all of Plaintiff's non-exertional impairments.  Def.'s Br. at 5.

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.

*Bowling*, 36 F.3d at 436.  *Cf. Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) ("[T]he holding in *Bowling* stated only that an ALJ may not rely on a hypothetical without giving the claimant an opportunity to correct deficiencies in the question.  It did not state that a party's failure to point out the problems in a defective hypothetical automatically salvages that hypothetical as a proper basis for a determination of non-disability." (citing *Bowling*, 36 F.3d at 436.)).  Plaintiff does not contend that Plaintiff or his attorney were deprived of a fair opportunity to correct any purported deficiencies in the hypothetical.  The record also shows that Plaintiff was afforded a fair opportunity to correct and question the vocational expert.  *See* Tr. at 673-75.  Therefore, the relevant inquiry here is whether the limitations the ALJ recognized have been reasonably incorporated into the hypothetical question posed to the vocational expert.

The medical expert testified that Plaintiff is limited to sedentary work that does not deal with the public.  *Id*. at 670.  The medical expert testified that there aren't any other restrictions on Plaintiff's ability to work.  *Id*.  The ALJ accepted the testimony of the medical expert.  *Id*. at 16.  The hypothetical question posed to the vocational expert included the limitations that the medical

expert testified about.[3] *Id.* at 672. Based on this hypothetical, the vocational expert gave testimony regarding positions that the ALJ's hypothetical individual could work in.[4] Plaintiff's attorney suggested additional limitations to the vocational expert, but these were not recognized in the ALJ's findings. *Id.* at 13-21. The ALJ's findings listed the positions that the vocational expert gave based on the ALJ's hypothetical. *Id.* at 20. The ALJ's hypothetical included limitations that the ALJ recognized in his findings, namely work that is sedentary in nature and work that does not deal regularly with the public. *Id.* at 20. Although Plaintiff objects to the ALJ excluding the need for use of a cane in the hypothetical (Pl.'s Br. at 15), this was not a limitation that the ALJ recognized (Tr. at 13-21). Therefore, the ALJ's hypothetical was not defective.

Sedentary work only requires Plaintiff to walk or stand occasionally. Although Plaintiff testified that he uses a cane whenever he is outside of his house to stand and to ambulate, Plaintiff also testified that he can still perform a range of activities including fishing, driving his wife around while she runs errands, driving his wife to and from work, walking around Wal-Mart for exercise, and playing with his grandchildren. *Id.* at 662-63, 655-56, 667. These activities all quite plausibly require occasional walking or standing. One of Plaintiff's treating physicians, Dr. Sazy, did not discuss Plaintiff's need to use a cane and his assessment of Plaintiff is compatible with the ALJ's

---

3. The hypothetical question asked, "An individual with a limited tenth grade education who, at the time in question, was 44 years of age, past work as you have described. Well let's assume this hypothetical person can only do sedentary work with no contact with the public and only superficial interaction with co-workers. Would there be any other work in the national economy such an individual would be capable of performing?" Tr. at 672.

4. The vocational expert testified that the hypothetical individual can work in sedentary unskilled assembly type positions (about 8,000 in Texas and about 160,000 in the national economy), sedentary unskilled manual hand laborer type positions (about 4,000 in Texas and about 70,000 in the national economy), sedentary, unskilled inspecting, sorting, and grading type positions (about 2,000 in Texas and about 30,000 in the national economy). *Id.* at 672-73.

decision that Plaintiff is capable of sedentary work. *Id*. at 438-39. The ALJ indicated that he gave Dr. Sazy's assessment significant weight. *Id*. at 17. Dr. Ho indicated that Plaintiff has leg weakness but did not discuss Plaintiff's need for an ambulatory device and indicated that his prognosis was "good." *Id*. at 626-29. Dr. Johnson, one of Plaintiff's examining physicians, noted that a hand held assistive device is needed for ambulation, but also noted that Plaintiff's "ability to do work activities in the sitting position would not be impaired." *Id*. at 465, 468. Plaintiff's physicians' assessments and Plaintiff's testimony regarding his activities provide substantial evidence that Plaintiff can perform sedentary work.

### 5. Manipulative Limitations

Plaintiff contends that the ALJ "did not consider the limitations in use of the hands upon [Plaintiff's] capacity to perform the jobs upon which he has relied." Pl.'s Br. at 16. Plaintiff testified that he has manipulative limitations. Tr. at 654. Plaintiff testified that he is not able to write without experiencing cramping of his fingers. *Id*. Plaintiff also testified that he has a hard time tying his shoes or handling "small things like nuts and bolts," but does not have much problems with buttons. *Id*. at 654, 662. The medical expert, after reviewing Plaintiff's exhibits, testified that Plaintiff is capable of performing sedentary work. *Id*. at 670. The Commissioner did not specifically address this issue, but generally contends that the ALJ "adequately considered the impact of all of Webb's non-exertional impairments on his ability to engage in work-related functions." Def.'s Br. at 5.

Dr. Ho, one of Plaintiff's treating physicians, indicated in a physical residual functional capacity questionnaire that Plaintiff has significant fine manipulation and reaching limitations. Tr. at 629. The ALJ indicated in his decision that he did not give "great weight" to Dr. Ho's assessment

18

because "the evidence clearly shows that the claimant would be able to perform sedentary work activity." *Id*. at 17. Dr. Box, one of Plaintiff's examining physicians, indicated in a residual functional capacity assessment that Plaintiff is precluded from fine work and high speed assembly. *Id*. at 437. Dr. Box also indicated that Plaintiff is capable of performing low speed assembly, pushing/pulling, and simple grasping. *Id*. The ALJ's decision did not mention Dr. Box's assessment. *Id*. at 13-20. Dr. Sazy, another one of Plaintiff's treating physicians, indicated in a residual functional capacity assessment that Plaintiff can reach frequently 33-66% of the time. *Id*. at 439. Otherwise, Dr. Sazy indicated that Plaintiff's hand functions have "no restrictions." *Id*.

The ALJ heard Plaintiff's testimony and determined that it was partially credible. *Id*. at 16. *See Falco*, 27 F.3d at 164 n.18 ("The ALJ enjoys the benefit of perceiving first-hand the claimant at the hearing."). The ALJ need not specifically articulate the evidence that supports his decision and the evidence that he rejected. *Id*. at 163. Based on the above, the Court is not able to conclude that the ALJ's decision is not supported by substantial evidence. The resolution of conflicting evidence is for the Commissioner and not this Court. *See Patton*, 697 F.2d at 592.

### 6. Sitting and Standing Limitations

Plaintiff also contends that the ALJ did not address the issue of Plaintiff's inability to remain in a seated position for six hours in an eight hour work day or Plaintiff's inability to stand and walk for two hours in an eight hour work day on a continuous basis. Pl.'s Br. at 17. The Commissioner did not specifically address this issue in her brief, but generally contends that the ALJ considered all of Plaintiff's non-exertional limitations. Def.'s Br. at 5.

Social Security Ruling 96-9p states:

Sitting: In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8 hour workday, with

19

a morning break, a lunch period, and an afternoon break at approximately 2 hour intervals. If an individual is unable to sit for a total of 6 hours in an 8 hour workday, the unskilled sedentary occupational base will be eroded. The extent of the limitations should be considered in determining whether the individual has the ability to make an adjustment to other work.

Alternate sitting and standing: An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodate by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

Dr. Box, one of Plaintiff's examining physicians, indicated in a residual functional capacity assessment that Plaintiff can stand for 30 minutes at one time and sit for two to four hours at one time. Tr. at 436. Dr. Box also indicated that Plaintiff can stand a total of two to four hours in a day, and sit for a total of four to six hours in a designated work day. *Id*. Dr. Sazy, one of Plaintiff's treating physicians, indicated in a residual functional capacity assessment that Plaintiff can stand for four to six hours at one time, and for six to eight hours total. *Id*. at 438. Furthermore, Dr. Sazy indicated that Plaintiff could sit for one to two hours at one time and sit for six to eight hours total. *Id*. Dr. Johnson, one of Plaintiff's examining physicians, indicated that Plaintiff can sit about six hours and stand and/or walk at least two hours in an eight hour workday. *Id*. at 468. Dr. Ho indicated in a physical residual functional capacity questionnaire that Plaintiff can sit for one hour at one time and stand for ten minutes at one time. *Id*. at 627. Dr. Ho also indicated that Plaintiff can sit for less than two hours in an eight hour work day and can stand/walk for less than two hours in an eight hour work day. *Id*. at 628. However, Plaintiff testified that he sits in a chair most of the day. *Id*. at 659-60.

Although Dr. Ho's assessment of Plaintiff's sitting/standing abilities may not be compatible with sedentary work, Dr. Sazy's, Dr. Johnson's, and Dr. Box's assessments are compatible with sedentary work.  Therefore, the ALJ's determination that Plaintiff is capable of performing sedentary work is supported by substantial evidence.  The resolution of conflicting evidence is for the Commissioner and not this Court.  *See Patton*, 697 F.2d at 592.

## IV.  CONCLUSION

In light of the Court's extensive review of the record in this case, the Court hereby finds that substantial evidence supports the Commissioner's decision.  Therefore, this Court recommends that the final decision of the Commissioner be **AFFIRMED**.

**SO RECOMMENDED**.  October 4, 2006.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).